## NIEMAN *v.* MITCHELL.

EVIDENCE; COMPETENCY OF WITNESSES; SELF-SERVING
DECLARATIONS.

1. In a suit in equity against an executor, who is charged also with being a trustee with respect to the subject-matter of the suit, it is not competent, under R. S. U. S., Sec. 858, for the complainant to testify as to an alleged agreement with the decedent, where an adverse result of the litigation would diminish the estate.

2. Self-serving declarations made by a decedent in his lifetime, are not competent evidence in a suit against his executor, when such declarations were not made in the presence of the complainant or communicated to him.

No. 93. Submitted November 17, 1893.—Decided January 3, 1894.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill against an executor and legatee. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree dismissing a bill filed in the Supreme Court of the District by George Nieman and his wife against George W. Ray, as executor and trustee,

and certain other parties as legatees, under the will of Middleton Mitchell, deceased.

Complainants allege they were the owners in fee simple of a tract of land situated in the District of Columbia, which on January 25, 1882, they conveyed by deed to said Middleton Mitchell, who had the same recorded; that they were indebted to Mitchell on that day in the sum of $3,675, for which he held their notes, secured by a deed of trust upon said land; that being unable to pay the money, they agreed with Mitchell to convey him the land in satisfaction of the debt, upon his agreement to sell the land in eight years, and out of the proceeds thereof to pay himself the said sum of $3,675, and deliver to them whatever remained; that Mitchell agreed that the use and occupation of the premises of which he was to have immediate possession should be in full satisfaction of all interest upon said sum, together with such improvements as he might make upon the land.

The agreement to this effect is made an exhibit to the bill and purports to have been executed by Mitchell with his mark, and witnessed by E. Nieman. It is further alleged that Mitchell died December 8, 1877, leaving a will, in which the defendant Ray was appointed executor, and the land devised by him in trust to sell, with direction to pay the revenues arising from the proceeds of sale to Eliza Mitchell until her death, and then to distribute the sum among certain legatees, who, together with said Ray and Eliza Mitchell, are made defendants; that said Ray has sold the land for $6,100, which he now holds in his possession; that complainants had no knowledge of the provisions of the will, or of the sale, until after conveyance had been made to the purchaser. The prayer for relief is that defendant Ray be decreed to hold and pay to complainants all of said fund over the said sum of $3,675.

The answer of defendants put in issue the allegations with respect to the alleged agreement, and evidence was taken thereon.

*Mr. T. J. Pickett* and *Mr. M. J. Colbert* for the appellants.

1. The complainant, George Nieman was a competent witness as to the agreement between Mitchell and himself. R. S. U. S., Sec. 858, is in force in this District. *Meguire* v. *Corwine*, 3 McArthur, 81; *Page* v. *Burnstine*, 102 U. S., 664. But this is not an action against an executor or a case in which a judgment can be rendered against him in his capacity as executor. An executor or administrator is the person vested with the legal title to the personal estate of the deceased for the purpose of administering and distributing the same according to law. He has no sort of title to or interest in the real estate of the deceased. It happens in the present case that the executor named in the will charged with the duty of administering the personal assets of the deceased is identical with the trustee of the real estate; but this action is not against George W. Ray in his capacity as executor, but in his capacity as trustee. If the testator had directed George W. Ray to sell his real estate and should have named John Smith as his executor the present suit would not have been brought against the executor at all.

This suit is not brought to recover a personal obligation due by the deceased, but the court is asked to declare a trust in favor of the complainants upon the real estate of which Mitchell died seized, and the suit is filed, not against his personal representatives, but against the persons to whom the title to his real estate has passed under the operations of his will. The executor of Mitchell's estate cannot bring the fund now in his hands into the Orphans' Court of this District for the purpose of having his accounts settled there.

The Orphans' Court has no jurisdiction to administer the proceeds of the sale of real estate. Parties who are both executors and trustees under a will are held to the same responsibility, and the law requires of them the same discharge of duty in respect to their several capacities as if those capacities were represented by different persons. *Seegar* v. *State*, 6 H. & J., 162; *State* v. *Cheston*, 51 Md., 162. This same question was presented and decided in the

general term of the Supreme Court of this District in the case of *Droop* v. *Metzerott.* In that case it was held that where executors have settled their estate, but retain control thereof as trustees, under the will in a suit in which judgment must be rendered for or against them as such trustees and not as executors, either party may testify. Such a suit is not within the provisions of section 858, R. S. U. S. *Droop* v. *Metzerott,* 18 D. C., 89. There is no statute in any of the States precisely similar to the provisions of our act, and the cases holding that in an action of this kind neither party shall be allowed to testify are based upon the peculiar language of each statute. In New York State the inhibition relates to "executors, administrators, or *survivors* of a deceased person." In Illinois the language of the statute is the "administrator, executor, heir, legatee, or devisee." The Nebraska statute is the same. Upon this point it is submitted that in view of the plain language of the act and the construction placed upon it by the Supreme Court of the District of Columbia, sitting in general term, at that time the highest tribunal in this District, the complainant, George Nieman, was a competent witness in his own behalf.

2. Upon the proposition, that the declarations of Mitchell in his own interest, testified to by certain witnesses called on behalf of the defendants, are incompetent, the law is so elementary and the declarations so plainly hearsay that reference is made only to 1 Greenleaf, Section 99.

If Mitchell had been living, and this action had been brought against him personally, manifestly it would be incompetent for any person to testify as to statements made by him, and the fact of his death does not change the rule.

3. The court below erred in dismissing the bill upon the depositions offered in evidence. Two witnesses on behalf of the complainants testify positively and unequivocally that the agreement upon which this suit is based was executed by the deceased with full knowledge of its contents, and they have not been impeached in any way.

*Mr. John Ridout* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first question is upon the competency of complainant, George Nieman, to testify to the agreement between Mitchell and himself, and the execution thereof by Mitchell. The evidence was held inadmissible under the proviso to the statute which permits parties to the suit to testify on their own behalf. R. S. U. S., Sec. 858.

On behalf of complainants, it is contended that Ray must be regarded as a trustee merely, and not as executor, with respect to the subject matter of the suit, and therefore that the case is not within the exception.

The court did not err in suppressing the evidence, in so far as it related to the negotiations for the execution and delivery of the agreement sought to be established. The executor, as such, is a party to the suit, and this brings the case within the letter of the statute, while it is equally clear that it is within its spirit also.

An adverse result of the litigation will be the diminution of the estate in the hands of the executor for distribution under the provisions of the will. The conflict is between the complainant and the deceased, between the living and the dead.

2. The court should also have suppressed the evidence of Daniel P. Greenfield, one of the defendants, which was properly objected to by complainants. This witness was permitted to testify to statements made to him by Mitchell. He said that Mitchell told him and his mother that he had met Nieman on the road and had been invited by him to an oyster feast at his house; that Nieman and his sister were there, and Nieman produced a paper for him to sign and for his sister to witness; witness asked him if he signed the paper, to which Mitchell replied, " No "; and then added, " Mr. Nieman is up to some rascality." Nieman was not present when these declarations were made, and they were never communicated to him. They were self-serving declarations of Mitchell, and not admissible under any rule of evidence, on his behalf or in the interest of his estate.

3. The burden of proof being upon the complainants, it remains to be considered whether the evidence is sufficient to make out their case.

The question is, does the evidence show that Mitchell made, and signed with his mark, the agreement set up by Nieman?

Nieman is a German of some education, but deficient in his knowledge of English. The agreement was wholly written by him. Mitchell was a sensible, shrewd and thrifty man, but could neither read nor write. He had many business transactions, and was accustomed to sign instruments by making his mark.

The original agreement is before us and bears the mark of ill usage. It is worn through at the folds, and is badly discolored by contact with some greasy substance. It was produced by Nieman, who says that it had been mislaid and supposed to be lost; and that after the sale he made a close search for it, by the advice of his attorney, and found it in a barrel of old papers in the cellar of the house in which he was living some few miles from the city of Washington. He thinks the paper got among some old copies of the New York Christian Advocate that were kept in an organ box, and were afterwards thrown into the barrel in moving.

Defendants do not deny that the instrument was actually written about the time of its date by Nieman with the intention to have Mitchell sign it; but they do deny that it was ever agreed to or executed by him. It was in accordance with this theory that they offered to prove Mitchell's declarations concerning Nieman's attempt to procure his signature to such an instrument.

Mrs. Nieman was not offered as a witness. Had she been, her testimony would have to be excluded as her husband's has been.

The only direct evidence to the execution of the agreement is furnished in the depositions of Elise Nieman, the sister of complainant. She lived with her brother until July, 1884, when she went to Parkersburg, Iowa, where she

was living when her depositions were taken. She says that her brother drew up the paper, that she saw Mitchell sign it by making his mark, and that she signed it as a witness. This occurred in her brother's house, and Mitchell, George Nieman, his wife and witness were the only persons present. She said that " Mitchell had a note against Nieman, secured by a deed of trust on the place, and the talk between them was to the effect that Mr. Mitchell should use and manage the place for the interest due each year upon the debt, and the use of the place was to pay him for the interest and the improvements he might make upon it. Mr. Mitchell said he thought he could manage the place to better advantage for both of them if Mr. Nieman would give him the management and control of it. The substance of the conversation was to the effect that Mr. Mitchell was only to have the place to use and manage and take care of it because he wanted to keep it up, so that his security at Mr. Nieman's place would be more safe to him. . . .After the paper was executed it was given to Mrs. Nieman, who laid it, together with some other papers, on the organ in the dining-room. The paper was lost in some way and I never saw it again until now." She said further that once, after the agreement was supposed to be lost, Mrs. Nieman was " worrying about it," and she heard Mr. Mitchell say " not to worry, that he never would cause them any trouble, and would never turn them off the place, and that all he wanted was his just dues." She further testified that he said, " all he wanted was what was due him, and that when the place could be sold all he wanted out of it was what was due him, and Mr. Nieman could have the rest of it." No attempt was made to impeach, or in any manner discredit, this witness, save by asking her if she did not have an interest in the result of the suit, to which she replied she " had no interest except a natural desire to see her brother successful."

The record discloses some circumstances tending to support the contention on each side. Among these, on behalf of defendants, is the fact that Mitchell seems never to have

mentioned to any one the existence of any trust in the land for Nieman's benefit, and disposed of it by his will as if there were none.

Again, Nieman leased the land for two years, from the date of his conveyance, at the expiration of which he surrendered the possession to Mitchell, who moved thereon, and before his death, according to the testimony of defendant Ray, " spent in all between $1,000 and $1,500 in improvements."

On the other hand, testimony uncontradicted shows that the property, at the time of the conveyance to Mitchell for $3,675, was worth about $6,000. Nieman testified also that he had an offer of $5,000 in cash for it just before the conveyance, which he had refused. There was then talk of building the electric railroad from Georgetown to Tenallytown, which was reasonably expected to run by the land and enhance its value. There is no evidence of the existence of a situation of which Mitchell was about to take advantage and secure the land by foreclosure. Nor is there any that Nieman was forced into making the conveyance. He and Mitchell seemed to have been on friendly, if not intimate, terms, and the money due had been loaned in varying sums from time to time, until it amounted to the said sum of $3,675. There is nothing in the circumstances surrounding the making of the deed at the very time thereof which tends to negative the fact that there may not have been some purpose of mutual benefit in the transaction. The defendants could hardly be expected to disprove Nieman's statement that he had been offered $5,000 for the land, and hence we may give little or no weight thereto. But if the land was not worth $6,000 or something near that amount, as testified to, it would have been very easy for defendants to have shown it.

That they did not undertake to contradict this evidence of value is assurance, therefore, of its truth, and the circumstance is an exceedingly strong one in support of the alleged agreement. Why should Nieman, in satisfaction of a debt

of $3,675, have made an unconditional conveyance of property then worth $6,000, and which was expected to advance through the building of a railway which was afterwards constructed? We search in vain for a reason in the record before us. It may be granted that the testimony concerning the execution of the agreement is not absolutely free from suspicion, but the circumstances which give rise to it are neither stronger nor more numerous than those which often attend upon the transactions of men, and may be attributed to negligence, to mutual confidence, and to the too frequent failure of men in health to consider the probability of change in a situation through the death of parties.

In a case where one who has conveyed land by deed absolute on its face seeks to engraft a trust thereon, or to convert his deed into a mortgage by parol evidence, it is eminently proper to require that the proof to entitle him to relief should be clear and satisfactory. The rule is just and equitable. If one choose to rely upon the honor of another, or be careless enough to leave to the chances of oral proof that which could easily be reduced to writing, he has only himself to blame for being brought within a rule which long experience has shown to be in the interest of justice, as tending to suppress fraud. In this case, however, the complainants did reduce the agreement to writing. There is no uncertainty as to its terms. The sole question is: Did Mitchell subscribe his mark to it? If he had been able to write his name there might probably have been no controversy, for his signature could doubtless then have been proved if genuine, or disproved if a forgery.

The consequences of his inability to write even his name should not be visited upon Nieman; but rather upon himself if any one. The circumstances surrounding the transaction are not, in our opinion, inconsistent with the truth of Elise Nieman's testimony. She has either told the truth or a wilful falsehood. It is certain that the agreement was actually prepared by Nieman, about its date and the signature of Elise Nieman, as a witness was subscribed about the

same time. The agreement then was either actually made with Mitchell and executed by him, or it was concocted by her brother, with her co-operation, to be used in the future for the purpose of defrauding Mitchell or his estate.

After a careful consideration of the testimony we can find nothing to justify the conclusion that the instrument is a forgery and that Elise Nieman has committed perjury in attempting to establish its validity.

*It follows from what has been said that the decree appealed from should be reversed, and it is so ordered, with costs to the appellants. The cause will be remanded, with direction to pass a decree in accordance with the foregoing opinion, in which also the costs in the court below will be ordered paid out of the fund in the hands of the executor.*